**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

JAMES ADAM WRIGHT, JR.,
ADC #142769                                                                                        PLAINTIFF

4:20CV00464-JM-JTK

SHELTON, et al.                                                                                  DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.        The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.     Introduction

Plaintiff James Wright is a state inmate incarcerated at the Varner Unit of the Arkansas Division of Correction (ADC).   He filed this action pursuant to 42 U.S.C. § 1983, alleging excessive force by Defendants in violation of his Eighth Amendment rights. (Doc. No. 1)

This matter is before the Court on the Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 51-53), to which Plaintiff responded (Doc. No. 58). Each of the parties then filed a Reply. (Doc. Nos. 59, 63)

### II.    Facts (Doc. No. 1, pp. 4-5)

Plaintiff alleged that while escorting him back to his cell on January 30, 2019, Defendant Shelton became aggressive and tried to throw Plaintiff to the ground, and Defendant Cotton assisted. During this time, Plaintiff was handcuffed and shackled, and Shelton rammed his shoulder into Plaintiff's right shoulder repeatedly and then "slammed" him.

**III.    Summary Judgment Motion**

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

**A.    Defendants' Motion**

**1)    Official Capacity**

The Court initially agrees with Defendants that Plaintiff's monetary claims against them in their official capacities are barred by sovereign immunity.   Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

**2)    Individual Capacity**

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively

reasonable manner.   It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   Qualified immunity is a question of law, not a question of fact.   McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).   Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.   Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 3)   Exhaustion

Defendants first argue that Plaintiff's claims against Cotton should be dismissed for failure to exhaust his administrative remedies prior to filing this lawsuit, as required by the ADC grievance

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

procedure, Administrative Directive (AD) 14-16 (Doc. No. 51-4), and the Prison Litigation

Reform Act (PLRA), 42 U.S.C. § 1997e.[2]  Defendants presented the Affidavit of Terri Grigsby-

Brown, Inmate Grievance Coordinator for the ADC, who stated that the grievance policy requires

that inmates "must specifically name each individual involved and fully exhaust their grievance

prior to filing a lawsuit." (Doc. No. 51-3, p. 2) Ms. Brown stated that she reviewed Plaintiff's

medical grievance file and found that he filed and exhausted one grievance concerning the issue

of this lawsuit, but did not specifically name Defendant Cotton or claim that he used excessive

force against Plaintiff. (Id., pp. 5-6)

In Response, Plaintiff admitted that he did not name Cotton in the grievance because he

did not know Cotton's name. He also claimed that Defendant Cotton should not be allowed to use

this as a defense, because he missed the October 20, 2020 deadline to file a motion based on failure

to exhaust.

According to the PLRA,

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813

(E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that

administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the

United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion

---

[2] On April 26, 2021 (Doc. No. 50) this Court granted Defendants' Motion to include the exhaustion argument in this dispositive Motion, because Defendant Cotton was not served with a copy of Plaintiff's complaint until after the deadline for submitting such argument expired.

clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001).   In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v. Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000)).   In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).   Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. 199, 218 (2007).

The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91. The exhaustion requirement was enacted to "reduce the quantity and improve the quality of prisoner suits," by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524, 525 (2002).

6

In <u>Burns v. Eaton</u>, the Eighth Circuit Court of Appeals held that an inmate's failure to specifically name a defendant and grieve his conduct in a grievance he filed about the incident at issue, mandated that defendant's dismissal for failure to exhaust. 752 F.3d 1136, 1141 (8th Cir. 2014).   In addition, in <u>Champion v. Akins</u>, the Court held that even if a defendant is named or identified in a grievance, an inmate's failure to explain the substance of the defendant's involvement in the incident, as set forth in the ADC grievance procedure, mandated dismissal of that defendant for failure to exhaust. 498 Fed. Appx. 670 (8th Cir. 2013 (per curiam) (unpublished opinion).

In this case, the ADC grievance policy in effect clearly instructs inmates to "specifically name each individual involved for a proper investigation and response," and to include on the grievance form "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses,..." (Doc. No. 51-4, pp. 4-6) In addition, the policy states that inmates "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit and Claims Commission claim. If this is not done, their lawsuits or claims may be dismissed immediately." (<u>Id</u>., p. 17) The grievance form also contains the following direction: "**<u>BRIEFLY</u>** state your one complaint/concern and be specific as to the complaint, **<u>date</u>**, and place, name of personnel involved and how **<u>you</u>** were affected." (Id., p. 19)

In the grievance at issue, VSM 19-00434, Plaintiff stated:

On 1/30/19 during classification in cb1 I was about to be escorted back to my cell after the Warden asked me to leave. I said a couple more words then the Sgt. Shelton and the Cpl that escorted me snatched me away from the door. I turned to ask why' why you snatched me when Sgt. Shelton began trying to sling me to the floor. After 2 attempts I was thrown to the floor at which time Sgt. Shelton hit my head a couple of times. This was excessive force. I was in the shackles and handcuffs not posing

7

any threat to anyone. I never made any violent moves or gestures plus there was not direct orders given. Sgt. Shelton and the new Cpl do not show name retaliated because of a comment I made about being racist. Due to these officers negligence I was a victim of excessive force. (Doc. No. 51-5)

Although Plaintiff did not specifically name Cotton in the grievance, he referred to him as the new Cpl that escorted him. In addition, he alleged that both officers "snatched" him, and given his description of the incident, it would not be hard to infer that both of the officers were involved in taking Plaintiff to the ground. The Court finds that the wording of the grievance sufficiently placed the Defendants on notice of the incident and provided them the "time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 525. Therefore, the Court finds that Defendant Cotton's failure to exhaust argument should fail.

### 4)   Excessive Force

Defendants next argue that Plaintiff failed to produce sufficient evidence that they acted maliciously or sadistically to cause him harm. Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017) (citing Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)). In support of their Motion, they provide a copy of Plaintiff's deposition (Doc. No. 62-1), the health encounter recorded following the incident (Doc. No. 51-1, p. 15), the Declaration of Shelton (Doc. No. 51-2), and a copy of the Internal Affairs report created following an investigation of the incident. (Doc. No. 51-6)

### a)   Plaintiff's Deposition Testimony

Plaintiff admitted that in the past he was convicted of disciplinary violations for using force against officers, and he agreed that as a result of the January 30, 2019 incident, he was convicted for failure to follow orders. (Doc. No. 62-1, p. 3) He claimed that the incident began when leaving a classification hearing. (Id.) Although it was time to leave, Plaintiff wanted to say something to the Warden and said a couple more words before Defendants started pulling on Plaintiff. (Id., pp.

3, 6) At that point, Defendant Cotton accidentally stepped on the back of Plaintiff's shoe as he escorted Plaintiff back to his cell. (Id.) Plaintiff turned to Cotton and told him to watch where he was stepping, and then "Shelton started to try to throw me to the ground, but I didn't initially just fall, and I was like 'hey what are you doing? That's when I kept hollering which caused Lieutenant Brown and them to come out of the office. That's when he got to ramming his shoulder, Shelton, into my shoulder." (Id., pp. 3-4) Plaintiff further admitted that it took Shelton a couple of tries to get him to the ground, but denied that Shelton gave him any direct orders. (Id., p. 4)

Plaintiff stated that he fell on his right shoulder and head, "a graze of the head," and denied that either of the officers banged his head on the ground. (Id., p. 6) He stated, "it wasn't enough to cause me a serious injury, head injury or anything like that." (Id.) Medical staff did not note any knots on his head or swelling, and gave him Acetaminophen. (Id., p. 7) Although he did not complain about shoulder pain at that time, he suffered a dull ache which would not go away. (Id.) He also stated that his shoulder was not dislocated or broken and that there were no muscle tears. (Id.)

**b)     January 30, 2019 Health Encounter (Doc. No. 51-1, p. 15)**

According to the notes, Plaintiff stated, "I'm okay they just slammed my head 3 times, I will probably have swelling and a headache later but fine now." Plaintiff 's vitals were normal and he had a steady gait. No knots to the head or swelling were noted and he was advised to place a sick call if needed.

**c)     Defendant Shelton's Declaration (Doc. No. 51-2)**

Shelton and Cotton escorted Plaintiff from a classification hearing on January 30, 2019, and for some reason, Plaintiff did not want to leave classification following the hearing,. He

9

became combative and attempted to jerk away from the officers and refused to walk. Shelton then gave Plaintiff a direct order which he refused and jerked away and attempted to assault the officers, including spitting at the two Defendants. Shelton gave Plaintiff a second direct order to stop and Plaintiff again refused. Shelton then took Plaintiff to the floor to stop his actions and obtain control of the situation and at that time Plaintiff finally complied and walked as directed. Shelton charged Plaintiff with assault and failure to obey verbal and/or written orders of staff; although Plaintiff was convicted of both, the assault charge was reversed on appeal.

### d)    Internal Affairs Report (Doc. No. 51-6)

Warden James Gibson referred the incident to Internal Affairs for review, and the Investigator issued her report to Raymond Naylor, the Internal Affairs Administrator, on February 22, 2019. The information provided to the investigator was that while staff escorted Plaintiff back from Classification on January 30, 2019, Plaintiff became combative and refused to walk. Plaintiff attempted to spit on staff and Shelton took Plaintiff to the floor to regain control of Plaintiff. Control was regained and Plaintiff was taken back to his cell, after which medical assessed him with no noted injuries. Security actions reported included that Plaintiff attempted to jerk away from staff during the escort and Shelton gave Plaintiff orders to stop. Plaintiff tried to spit on staff and refused to walk and staff noted him trying to pull away. After Plaintiff refused all orders he was taken to the floor to regain control. Staff then escorted Plaintiff to medical where it was noted he had no injuries. The investigator reviewed the video which showed staff escorting Plaintiff but the camera view did not show the incident. After review of the "packet," the investigator found that the action taken with respect to use of force was appropriate.

### B.    Plaintiff's Response

Plaintiff claimed in his response that upon leaving classification on the date of the incident he was "yanked aggressively from the door, without warning, and upon asking 'why you snatching me,' Sgt. Shelton immediately began to slam his shoulder into my right shoulder area." (Doc. No. 58, p. 32) He also stated that both Defendants "proceeded to 'sling' the plaintiff to the floor violently landing on my head and right shoulder area," and that Shelton then hit Plaintiff's head against the floor a couple of times. (Id.) He complained that since the incident he experienced aches and pains in his right shoulder and cannot perform strenuous activities using his shoulder for lengthy periods of time. (Id.) He denied that he spit on the Defendants, and stated that Defendant Shelton did not include that fact in his statements during the disciplinary process. (Id., p. 34) He also noted that he ultimately was found not guilty of the assault charge. (Id.) He claimed Defendants did not reasonably participate in discovery, that he did not received updates from the courts on deadline extensions, and did not receive a complete copy of his deposition. (Id., pp. 34-35) Plaintiff also presented the affidavit of inmate Deverick Scott, who stated that he witnessed Sgt. Shelton pull Plaintiff with force and heard Plaintiff ask why he was pulling him like that. (Id., p. 26) Scott also stated that Shelton slammed his shoulder into Plaintiff's right shoulder while Wright hollered to stop, and then Shelton forcefully lowered Plaintiff and slammed his shoulder into Plaintiff's three or four times. (Id.) Both Defendants grabbed Plaintiff and slammed him to the floor while Plaintiff was handcuffed and shackled. (Id.) Finally, Shelton kneed Plaintiff's head a couple of times before another officer came to their assistance and help Plaintiff up. (Id., p. 27) Finally, Plaintiff presented a copy of a sick call he submitted January 22, 2020, in which he complained that he was not properly treated for the shoulder injury he suffered during the incident. (Id., p. 30)

11

**C.     Defendants' Reply**

Defendants note that while they initially did not respond to Plaintiff's untimely discovery to Cotton, they did respond after the Court extended the discovery deadline. In addition, they stated that Plaintiff's sick call request a year after the incident is insufficient proof of injury and is contradicted by the grievance Plaintiff filed. Plaintiff's deposition testimony also contradicted his claim that Shelton slammed his head on the ground several times. (Doc. No. 51-1, p. 6) Defendants denied that they failed to comply with discovery and claimed that Plaintiff did not present "affirmative evidence" from which a jury could find that Defendants acted maliciously or sadistically, citing Worsham v. Cagle, No. 3:17-cv-00149-JJV, 2018 WL 10705080 at *6 (E.D.Ark. April 25, 2018) (quoting Crawford-El v. Britton, 523 U.S. 574, 600 (1998)).

**D.     Analysis**

To support an excessive force claim, Plaintiff must allege and prove that force was not applied in a good-faith effort to maintain or restore discipline, but rather, maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).   Factors to be considered in determining the reasonable use of excessive force include whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by the officers, efforts the officers used to temper the severity of their response, and the extent of the inmate's injury. Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). In Wilkins, the United States Supreme Court held that the absence of serious injury is not irrelevant to an excessive force inquiry, but is a factor which could suggest whether the force could "plausibly have been thought necessary" and might also provide an indication of the amount of force applied. 559 U.S. 34, 37 (quoting Hudson v. McMillian, 503 U.S. at 7.) While a "limited application of capstun to

12

control a recalcitrant inmates constitutes a 'tempered response by prison officials' when compared to other forms of force, ... not every instance of inmate resistance justifies the use of force." <u>Treats</u>, 308 F.3d at 872 (quoting <u>Jones v. Shields</u>, 207 F.3d 491, 496 (8th Cir. 2000)).

In this case, Plaintiff's deposition testimony of the incident contradicts his current claim that Defendants "slammed" him to the ground and hit his head against the ground several times. Plaintiff denied in his deposition that Defendants hit his head, described it as a "graze" to the head, and also stated that he did not suffer a serious injury. (Doc. No. 62-1, p. 6) The health encounter notes do not support a finding of any injury and Plaintiff admitted in his deposition that Defendants did not immediately take him to the ground, thus inferring that he struggled with them at the time. And Plaintiff did not identify any "affirmative evidence" from which a jury could find that Defendants acted maliciously or sadistically to cause him harm. <u>See</u> <u>Crawford</u>, 523 U.S. at 600. Additional evidence that Plaintiff's conduct justified a minimal use of force is presented by the fact that Plaintiff was convicted at his disciplinary hearing of failing to obey orders and the Internal Affairs investigation into the incident found no improper actions by Defendants.

Therefore, the Court finds that Defendants acted reasonably under the circumstances and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

## IV.  Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 51) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 3rd day of June, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE